## THE PEOPLE v. ROMERO.

18    89
127   374

To authorize a *mandamus* it must appear not only that the performance of the act to enforce which the writ is asked, is a duty resulting from the office, trust or station of the party to whom the writ is to be directed, but that the performance has been requested and refused.

When in a criminal case a mistake or omission has occurred in a bill of exceptions settled by the Judge, he may allow a resettlement, provided it be asked before the transcript on appeal is sent to the Supreme Court, and the mistake or omission is supported by documentary evidence, or is not denied by the adverse party. But where the existence of the alleged mistake or omission rests in the mere recollection of the Judge or of counsel in the case, and it is not admitted by the parties, resettlement should be denied.

So after the transcript on appeal in a criminal case has been filed in the Supreme Court, it will not be sent back in order that the statement or bill of exceptions may be changed by a resettlement, except upon like proof or admission of

the mistake or omission alleged. This Court will not listen to affidavits or statements of parties as to what was admitted or proved in the course of proceedings in the Court below; and the certificate of the Judge, independent of the settled bill of exceptions, ranks no higher than such affidavits.

Errors in dates, in copies of documents, in the description of premises taken from conveyances, and the like, can be corrected by a resettlement; and upon proper showing, made before argument, the Supreme Court may send the record back to the Court below for that purpose. So where the errors are admitted.

Where in a criminal case the accused has been held to answer before indictment, he is entitled to an opportunity to challenge the panel of the grand jury; and if this privilege be denied him, the indictment found is void.

But this privilege must be asked for by the accused. He is bound to know when the jury meets, and the Court need not offer him his privilege of challenge, unless he first demand it.

APPEAL from the Third District.

The facts are sufficiently stated in the opinions of the Court.

*A. A. Cohen*, for Appellant, and against the *Mandamus*.

*Thos. H. Williams*, Attorney General, for Respondent, and for the writ.

FIELD, C. J. delivered the opinion of the Court on the application for *Mandamus*—COPE, J. concurring.

On the *Mandamus*. The defendant was indicted for murder, and was convicted of the crime in the first degree. An appeal was taken to this Court, and a bill of exceptions prepared by his counsel was presented for settlement to the Judge before whom the case was tried, upon notice to the District Attorney of the county, and was by the Judge settled and signed, and thereupon filed. The trial of the defendant took place on the third and fourth of' December, and the settlement of the bill of exceptions bears date on the twenty-sixth of the same month—the period for its preparation having been extended by order of one of the Justices of this Court. (Criminal Practice Act, sec. 435.) This bill shows that a motion was made to arrest the judgment on the ground that the defendant, being in custody and held to answer at the time of the impanneling of the grand jury, by whom he was indicted, was not permitted to appear in the Court of Sessions, and had no opportu-

nity to exercise his right of challenge, either to the panel or to an individual grand juror, and states that the facts set forth on this ground were admitted by the District Attorney.  It is upon the exception to the ruling of the Court on this motion that the defendant relies for a reversal of the judgment.  The bill constitutes a part of the record before us, the transcript of which was filed on the third of January.  In March, the Attorney General, upon the affidavit of the District Judge and the District Attorney, that the bill of exceptions was erroneous in the statement that the facts set forth and relied upon in the motion were admitted by the District Attorney, applied for a *mandamus* upon the District Judge, requiring him to sign a true bill of exceptions in the case.  An alternative writ was issued accordingly, and has been returned with a bill of exceptions, signed by the Judge, differing in various particulars from the one originally settled, the most important of which consists in the insertion of a statement that the facts alleged as the grounds of the motion were denied by the District Attorney, instead of being admitted, and that, no proof of them being offered, the motion was overruled.  The Attorney General now proposes to substitute and use this bill of exceptions in place of the one contained in the transcript.  The counsel of the defendant objects to this course, and in substance, though not in form, moves that the writ be quashed on two grounds : *first*, that it was improperly issued in a case not authorized by law ; and *second*, that a bill of exceptions once settled cannot be altered after the transcript has been sent to this Court upon the suggestion of a mistake as to a matter of fact, the evidence of which rests in the mere recollection of the Judge or of the counsel of the parties.    Both of these grounds are well taken.

1.  To authorize a *mandamus* it must appear not only that the performance of the act, to enforce which the writ is asked, is a duty resulting from the office, trust or station of the party to whom the writ is to be directed, but that the performance has been requested and refused.   " It is an imperative rule of the law of *mandamus*," says Tapping, " that, previously to the making of the application to the Court for a writ to command the performance of any particular act, an express and distinct *demand* or request to perform it.

People v. Romero.

must have been made by the prosecutor to the defendant, who must have *refused* to comply with .such demand, either in direct terms or by conduct from which a *refusal* can be conclusively implied ; it being due to the defendant to have the option of either doing or refusing to do that which is required of him before an application shall be, made to the Court for the purpose of compelling him. Both the demand and the refusal must also be shown on the affidavits made use of in support of the application for the rule." (Law and Practice of *Mandamus*, 282.) In the present case there was no showing made of this kind. The affidavits upon which the application was based do not allege any demand upon the District Judge, or any refusal by him. On the contrary, they indicate a desire on his part to perform the act which the writ commands.

2. The statute requires a bill of exceptions in a criminal case to be settled and filed within ten days after the trial of the cause, unless further time be granted by the Judge of the Court in which the trial is had, or a Justice of the Supreme Court; and its evident object is to secure the preparation and settlement of the exceptions whilst the evidence and rulings are fresh in the recollection of the Judge and counsel. The bill is to be carefully examined by the Judge, and all evidence and other matters not material to the questions raised are to be stricken out by him, whether agreed to or not by the parties, and the whole made conformable to the truth. (Crim. Prac. Act, secs. 435 and 436.) When a mistake or omission has occurred, the Judge may allow a resettlement, provided it be asked before the transcript is sent to this Court, and the mistake or omission is supported by documentary evidence, or is not denied by the adverse party. But where the existence of the alleged mistake or omission rests in the mere recollection of the Judge or of counsel in the case, and it is not admitted by the parties, a resettlement should be refused. Any other rule would be productive, in many instances, of great injustice. After the transcript has been brought into this Court, it will not be sent back in order that the statement or bill of exceptions (and these terms are used as meaning the same thing) may be changed by a resettlement, except upon like proof or admission of the mistake alleged. We cannot listen to conflicting affidavits or statements of parties as to

People v. Romero.

what was admitted or proved in the course of the proceedings in the Court below. The certificate of the Judge, independent of the settled bill of exceptions, cannot rank higher than those affidavits. His memory is of course subject to the same imperfections as that of the parties. His recollection may be met by the different recollection of others, and thus a controversy would ensue. It would be a very singular proceeding for us to give ear to a controversy of such a character; and yet it is difficult to see how this can be avoided if the certificate of the Judge can be read at all. Errors in dates, in copies of documents, in description of premises taken from conveyances, and the like, can be corrected by a resettlement; and upon a proper showing made before argument, we may send the record back to the Court below for that purpose. So, too, where the errors are admitted. But to go further than this would lead to infinite mischief.

In the present case the alleged error in the bill of exceptions is not admitted, and it follows from the views we have expressed that the record cannot be returned to the Court below in order that a resettlement may be had. The argument of the case on its merits must be had upon the bill as originally settled.

The alternative writ and the proceedings thereon are quashed.

At a subsequent term, the case having been argued on the merits, BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The bill of exceptions in this case states that it was admitted on the motion for a new trial that the defendant was not allowed to appear in the Court of Sessions, where the indictment was found, and challenge the grand jury, or any member of it, and that he had no opportunity to do so. The defendant was in prison for the crime charged at the time of the finding of the indictment. It seems to be an unquestionable right of the prisoner to challenge the grand jury, or any member, on the impanneling of the jury, when he has been previously held to answer. We see no provision of the statute allowing a challenge after such impanneling, when the prisoner had been previously in the custody of the law. It is not right that the prisoner should be convicted under these circum-

stances. The effect of the denial of his legal privilege of challenge was to render the grand jury incompetent to sit on his case, just as if he stood before a petit jury and was refused the right to challenge any one or more of the panel. We understand this statement to be made for the purpose of a new trial, and it is sufficient to require a reversal of the order refusing the new trial asked for. But the statement, or the admission contained in it, is not conclusive for any other purpose. If the prisoner were refused the privilege of challenging the grand jury in and by the Court of Sessions, the indictment is insufficient and worthless; it is not, in other words, a legal indictment, because not found by a body competent to act on the case; but to have this effect, the prisoner must have applied for leave or requested permission to appear and challenge the jury. It was not the duty of the Court of Sessions to bring him into Court for the purpose of exercising this privilege. It is the prisoner's business to know when the Court meets, and if he desires to challenge the jury, to apply, if in custody, to the Court, to be brought into Court for that purpose; and if he fails to do this, he waives his privilege of excepting to the panel or any member. *Prima facie* upon the admission in the record, the prisoner is entitled to a new trial; but if the fact be not as admitted, as has been suggested at the bar, the Court can proceed to try the prisoner again on this indictment. If the fact be as admitted, that the defendant was refused the privilege of challenging the grand jury, the charge had better be resubmitted to another grand jury.

Judgment reversed and cause remanded.